All right, Mr. McGregor, we'll hear from you first. Thank you, Your Honor. May it please the Court, Counsel, Madam Clerk, Darrell Two Hearts asks that his conviction for being an unlawful individual in possession of a firearm be reversed, and also asserts that his sentence should be vacated and remanded, in this case remanded for resentencing, with instruction to the District Court that the four offense-level enhancement under the guidelines for committing another felony offense with a firearm that facilitated that offense should not be imposed on the calculation of his total offense level. With respect to the first issue, Mr. Two Hearts was interestingly charged in a one-count indictment with being a prohibited person because, one, he possessed a firearm when he had a prior felony conviction, and, two, in the same count it was also alleged he was an unlawful user of a controlled substance. With respect to the gun possession charge, there are two issues, and the first is whether he actually constructively possessed the gun or not, and really this issue is controlled by about the first four or five minutes of the video on Exhibit 2 that this Court requested be sent down to them, which shows the arrest of Mr. Two Bulls and his removal from the arrest scene prior to the bags he had with him being searched. For the constructive possession to prevail, his mere proximity was not enough. He was certainly in the proximity of the bags. The question is whether they were his bags. The testimony at trial by the law enforcement was that he had said that they were his bags. The video shows that when he was immediately confronted by law enforcement with drawn guns as he got out of his vehicle and picked up the bags that were in the back of the SUV, he dropped them, spread himself eagle, spread himself spread eagle down on the sidewalk, and was handcuffed and then brought back to his feet by law enforcement. An officer asked him if this was his property that he had dropped. Another officer responded, he had them on him when I confronted him. He was then asked if somebody could come and get his property and he said, please call my mother. He was then taken away from the scene before the bags were searched. In one bag they did find a firearm. There was no evidence really that he had dominion and control over that firearm at the time. He had no knowledge, no evidence that he had any knowledge whatsoever that the firearm was in the bag. There was no identification on any of the three bags as to who they belonged to. And the problem really is that he was removed from the scene before law enforcement could make any further inquiries of him. He simply took the bags from the vehicle he had been driving, which the evidence showed was not his vehicle. As I said, immediately complied with law enforcement when they told him to get down, don't move, dropped his bags, was handcuffed, and removed from the scene. The bags were then searched and the gun was found. But again, there was no idea to tell who the bags belonged to. There's no evidence as to who packed them, who put them in the vehicle, how long they have had access to the bags, and no evidence Tuhart, as I said, knew that the gun was in the bag. So under those facts and the totality of the circumstances, we assert that the elements of constructive possession were simply not met in this case. There was an absence of evidence to establish that Mr. Tuhart knew the gun was in the bags or that he had actually sole physical dominion and control over those bags prior to and during the time when the gun was found. The second problem with his conviction for being a felon in possession of a gun is kind of a technical, illegal argument. Under Rahif, the government was required to prove the defendant knew he possessed a firearm. It also had to prove that he had the relevant status when he possessed the firearm. As we've said, there is no evidence that he knew the firearm was in those bags. It wasn't on him, as is typically the case in other cases of this nature. But there is no evidence that at the relevant time, which was April 25, 2020, Mr. Tuhart complied with the Rahif requirement that his status was established then. All that we have is evidence that he knew he had a prior felony conviction. There is no evidence about when that conviction occurred, no evidence when that conviction happened in relation to the relative date of the indictment. So we further submit on that. Counsel, did the stipulation regarding the prior conviction, was that a stipulation that he knew he had a prior felony conviction or that he had a prior felony conviction? The stipulation said that he stipulated and agreed or counseled it on his behalf that Mr. Tuhart had been convicted of a crime punishable by a term of imprisonment exceeding one year. That's all it said. And so is it your position that that was sufficient for a proof of knowledge generally, but just not knowledge as of the date of the offense? I think it is proof that he had the conviction. It doesn't speak to his knowledge, just that he had the conviction. But there's absolutely no proof in there on the temporal element that the government was required to prove. That's what I'm trying to get at. Is it your argument that there's no evidence that he knew he had a prior conviction or that there's no, or is it more specific that there's no evidence that he knew at that time? I think there is no evidence that he knew. I think you can probably infer that he knew it from the fact that counsel stipulated on his behalf to the prior conviction. And there's also the statement that counsel made in closing argument, although that was after the rule 29 motion, you know, had been made that he, uh, that he had that prior conviction. But the greater problem, as I said, is the absolute absence of any evidence on the temporal requirement of the reef decision to prove his status at the time. And so is, is that, um, is this point that you're talking about, is that before us on plain error review? No, I don't think it is because it's a point on, uh, on the rule 29 motion for dismissal of the conviction on the grounds of insufficiency of evidence. And this was a, a argument in support of that motion. So I don't think this is before you on plain error. Even if you were on plain error, um, there is error that the second component of reef was not met and it's plain that there was absolutely no evidence whatsoever in the record on the temporal aspect of the reef decision, uh, that, that there was, uh, his status was met on or before, uh, April 25th, 2020, which he said could have been handled in the stipulation or by some evidence of the date of the conviction, but it was not. The district court in pre-trial proceedings had told the government it could not, uh, submit the convictions, but it did not prevent the government from offering evidence when those convictions, prior convictions happened. And there's just simply no, no temporal knowledge in the record about when Tuharts, uh, was aware when the conviction, uh, uh, became a record in relation to the offense date, uh, indictment. And so when you say that the rehafe issue is part of the rule 29 motion, was that just an oral motion? Yes. That's a conclusion of the government's case. The government rested, uh, counsel made the rule 29 motion and then Tuharts rested. He did not, uh, himself, uh, present, present a case. So, uh. What was the, what was the nature of the rule 29 motion? Did it specify the rehafe issue? No, I don't believe it did. But as I say, this is a new, uh, kind of an argument in support of the rule 29 claim. It's not a, not a new claim. And, you know, this court has said in the past that new arguments are permissible, although new claims are not. Uh-huh. You know, I guess I didn't see the rule 29 motion in the transcript yet, but did it specify other grounds? No, it was just simply a basic standard motion, rule 29. Um, you know, the evidence was insufficient. I don't recall right offhand exactly what counsel said specifically, uh, on that. Um, but it was your standard rule 29 motion. Well, I don't know what that means. I mean, there's, well, I'll look it up. I don't know what the standard rules. I mean, there's lots of different rule 29 motions. Yes. You know. I can say it was an oral, it was an oral motion. But I'll, I'll, well, if you don't know what he said, I'll go read it. I mean, I'll find it and read it. Thank you. It's an oral motion and it is in the transcript. Probably around page, I don't know, 140 or so. Okay. What about the fact that the defense attorney apparently said closing argument that yes, he knew he was a felon? Yeah, that's, that's not a waiver of this item. I don't think so. I think that just reaffirms the stipulation and satisfies the first element of the standard. I don't think it's a waiver. Okay. I think that'd be different. If he'd said, was he a felon? Yes, that would be the first element. But he said, did he know he was a felon? That's the second element. Yeah, that's at the time. Was it, was his status as a felon at the time of the offense alleged in the indictment established? And there's, there's just simply no evidence of that temple aspect of this case. So for those two reasons, we would submit that the possession of the firearm. But counsel, we not, I mean, to get back to whether this is plain error, the, it's, it's clear that he served, didn't he serve penitentiary or prison more than one, at least, one or more than one prison sentences of over a year? Yes. Yes. It's clear he had prior felony convictions. And that's what the stipulation said. That he had a prior conviction of the subjecting him to more than a year in prison. It did not say when that conviction happened. It did not say the dates of those convictions in relation to the date of the indictment. So the secondary heath standard was simply not met. No evidence whatsoever. The second aspect quickly is on the drug possession. I think Exhibit 26, or Exhibit 3 and Exhibit 20, which is a screenshot off the video on Exhibit 26 is the evidence of that. At about 23 minutes and 25 seconds into Exhibit 3, we'll see an officer hand over a short white object to the booking officer, which they tell the booking officer was a bag, a baggie, one baggie, taken from Mr. Tuhart's hat to search at the jail. This was a third search at the jail. The booking officer said, oh, we searched him twice. He was also searched at the scene. It took him four times to find this baggie, which was in his video or in his watch pocket. The problem is that throughout all this, the evidence is about a baggie, but when the state chemist comes to trial and testifies for the first time, she says that there were three baggies given to her or wrapped with a rubber band. Until she testifies, you know, there is no evidence about that. And she also said then the problem is that she only tested one of those three. So there's only a one in three shot that this baggie was in fact the one taken. And it had 0.26 grams of methamphetamine. If I may, your honor, I say I have about two minutes left if I could reserve that time for rebuttal. You may. Thank you for your argument. Thank you, your honor. Mr. Hodges, we'll hear from you. Thank you. May it please the court, counsel. My name is Mark Hodges. I'm here today representing the United States respectfully requesting that this court affirm both Darrell Tuhart's conviction as well as his sentence. Mr. Tuhart's conviction should be upheld because there is clear evidence showing that he possessed a firearm while knowingly being a prohibited person. Law enforcement found Mr. Tuhart's in the process of removing three bags from the back of a vehicle. One of those bags was later searched. A backpack was found to contain a loaded nine millimeter handgun, syringes, a baggie with a crystal substance, a marijuana grinder, and a smoking device. A detective saw Mr. Tuhart's carry three bags out of that vehicle, including that backpack with the firearm in it, and carry them away from the vehicle. He was then arrested. Officers confronted him. He told them one of the detectives testified that he had said that the bags belonged to him and that when asked what he wanted done with them that he wanted his mother to come and pick them up. That evidence shows possession, both probably actual as well as constructive. He carried those bags and controlled them and had the firearm in them. In addition to that evidence showing that he possessed the firearm, there's also evidence showing that he was a prohibited from possessing firearms. He entered into a stipulation about his status as a felon. The stipulation was that he has been convicted of a crime punishable by 922 G. There can be a reasonable inference drawn from that that someone knows when they've been convicted of a felony, they know that they are a felon. Additionally, there was evidence... You might need to update your standard stipulation. I don't necessarily disagree with that, your honor. There could have been more in that stipulation. Well, you say one could infer that. I suppose that's true. You think that's enough by itself just to stipulate that he's been convicted? That's enough to prove beyond a reasonable doubt that he knew he had been convicted of a felony? I do. I think in light of Rehae, if you're correct, that that stipulation should be updated. But I think that given what was in the stipulation and the nature of a felony conviction and what that means for somebody, that they would know that they are a felon and that you could infer then that he knew that at the time. In regards to the status as an unlawful controlled substance user, evidence was presented showing that he had 0.26 grams of methamphetamine in his pocket. There was also evidence showing that in addition to the firearm in the backpack that he was carrying, there was syringes both used and one that was described as being loaded. There was a marijuana grinder in the backpack. And then there was also a marijuana blunt in the vehicle that Mr. Two Hearts was seen going in and out of. So reviewing those facts in a light most favorable to the verdict, there was ample evidence for a reasonable juror to conclude that Mr. Two Hearts possessed that firearm while knowing that he was a felon and while being an unlawful controlled substance user. The government didn't put on any evidence though that either about um his his actual use or maybe his demeanor at the time, any suggestion that he was under the influence, any evidence at all that he actually did use controlled substances? There wasn't any direct testimony about Mr. Two Hearts behavior, demeanor, or indications of in the backpack. I believe there would be a strong inference that he was a current user. That would be evidenced by the fact that he had an actual quantity of controlled substance, just about a quarter of a gram of methamphetamine. And then he also had those syringes, so a means to use the methamphetamine. Additionally, similar with the marijuana, he had the paraphernalia that you would use to make it a usable substance. And then the marijuana blunt would be a means of having smoked marijuana. Regarding the stipulation, even if the court does conclude that that stipulation is not sufficient, this is an issue that was not brought up at the time of the trial. Looking through the transcripts during the Rule 29 motion, the defense did make specific arguments about the possession and that's why the possession charge or why there wasn't sufficient evidence to show that Mr. Two Hearts not only possessed the firearm, specific arguments were made about why he was not proven to be a controlled substance user, but no specific arguments were made about that stipulation or there being insufficient evidence about his knowledge of his status as a felon. And so even if, and as I argued in the brief, additionally, this was a stipulation that was entered into by both parties, both parties signed the stipulation, the intent of that stipulation is clear from how defense counsel described it in the closing arguments as well as from the jury instructions that were entered into this case. In the jury instruction, that's instruction 11, the court described the stipulation and said the only effect of this stipulation is to establish the fact that the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year prior to the date charged in this indictment. There was no objection or discussion about that instruction, so I think that does show what the intent and interpretation was at the time of the trial of what both parties thought that that stipulation meant. And so if the court does conclude that the stipulation isn't sufficient, I believe we would be in the area of review of plain error, looking at the cases, there's been a lot of case law from this court about plain error review on situations where there were reheaved errors. Those cases, you know, looking at the third and fourth prongs of the plain error review, a defendant would have to show substantial rights were affected that the error is prejudicial if the defendant had a reasonable probability that but for the error, it would have been different and that there would be a miscarriage of justice. And looking at Mr. Tuhart's record, five prior felony convictions, four of which he served longer than one year in prison for was sentenced to longer than one year in prison for, they cannot meet those third and fourth prongs of the plain error review. And so given all of those facts, I am asking that you would sustain the conviction for being in possession of a firearm while being a prohibited person, both as a felon as well as an unlawful drug user. I'm also asking that you would affirm the sentence in this case. The district court did not abuse its discretion when it imposed the sentencing enhancement from 2K2.1B6B. The evidence in this case showed that Mr. Tuhart's had that methamphetamine in his pocket and was seen carrying that backpack that contained the firearm as well as some syringes. There was a strikingly similar case in United States versus Sneed that this court analyzed for the enhancement that would apply when someone commits another felony in connection with an unlawful firearm possession. In that case, defendant had been attempted to be stopped by police and ran, dropped the backpack that was later found to contain a gun as well as some paraphernalia, and then was found to contain methamphetamine on his person. And the court that there was sufficient evidence there to uphold a finding that the crime of possession of the methamphetamine was in connection and facilitated by the crime of the possession of the firearm. That's the same facts we have in this case. Absent the running, we have a defendant who was simultaneously possessing methamphetamine in his pocket and a firearm in his backpack. And based on the prior precedent from this court, the finding that those two were in connection should be sustained. And so unless there are any other questions, I would ask that the court confirm or affirm the conviction as well as the sentence and would see the rest of my time. Thank you. Very well, thank you for your argument. Mr. McGregor, we'll hear from you in rebuttal. Thank you, Your Honor. First, with respect to the possession insufficiency, the proof, I note that nothing else other than that baggie was tested. The marijuana bond syringes, none of that was controlled substance. As Judge Kelly noted, there is no proof other than that there was possession. There is no proof of use. There is only proof that if, in fact, you find that the baggie was the one that was in his pocket, it's proof only that he possessed 0.26 grams and the SUV from which he removed the bags was not his car. The officers testified it was not registered in his name. Quickly then, with respect to the sentencing argument, the standard here is that the record must indicate that the district court was aware the possession of the firearm facilitated another felony. And as note 14E says, that other felony is not a felony that is charged in the case. The indictment charged unlawful possession because of the drug possession that the government alleges was sufficient to sustain the four-level enhancement. But that's not what the notes on the rules say. There was no other evidence of any other felony. There were suggestions that state felony laws were violated, but no evidence was presented to the court what those state felony laws might have been. There was no submission of a state statute or anything that said, you know, this is the state law that could be violated, as is typically the case. I would certainly, well, invite Smead. The facts of Smead are a far cry from here. And we would ask this court to please reverse Mr. Truecourt's convictions on insufficiency of the evidence or failing that remand for resentencing without the four-point enhancement. Thank you. Four levels, I think you mean. Thank you very much. Yes, sir. Yes. Thank you for the argument. Thank you to both counsel. The case is submitted. The court will file an opinion in due course.